Filed 7/7/26  C.A. v. Superior Court CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| C.A., | |
| Petitioner, | E088297 |
| v. | (Super.Ct.No. DPRI2600017) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Walter H. Kubelun, Judge.  Petition denied.

Brent L. Valdez for petitioner.

No appearance for Respondent.

Minh C. Tran, County Counsel, Jamila T. Purnell, Assistant County Counsel and Julie Jarvi, Deputy County Counsel, for Real Party in Interest.

INTRODUCTION

Petitioner C.A. (mother) filed a petition for extraordinary writ pursuant to California Rules of Court, rule 8.452 challenging the juvenile court's orders taking jurisdiction of her sons, Isa.A. and Isr.A., removing them from her custody under section Welfare and Institutions Code[1] section 361, subdivision (c)(1), bypassing reunification services under section 361.5, subdivision (b)(5), and setting a section 366.26 hearing. We deny the writ petition.

PROCEDURAL BACKGROUND

On January 16, 2026, the Riverside County Department of Public Social Services (DPSS) filed a section 300 petition on behalf of Isa.A., Isr.A., and L.A. (the children). At that time, Isa.A. was three years old, Isr.A. was 23 months old, and L.A. was 5 months old. The petition alleged that L.A. (the child) came within the provisions of section 300, subdivisions (a) (serious physical harm), (b) (failure to protect), (e) (serious physical abuse), and (g) (no provision for support). The petition alleged that, Isa.A. and Isr.A. (the boys) came within the provisions of section 300, subdivisions (b), (g), and (j) (abuse of sibling). Specifically, the petition alleged that, while in the care and custody of mother and the children's father, D.A. (father)[2], father abused the child and the explanation given by mother and father (the parents) was inconsistent with the injuries; mother knew or reasonably should have known the child was being abused, and she failed to protect the

---

[1] All further statutory references will be to the Welfare and Institutions Code, unless otherwise indicated.

[2] Father is not a party to this writ.

2

child; further, the boys were at risk of similar harm; and father's whereabouts were unknown.[3]

The social worker filed a detention report and stated that DPSS received a referral alleging physical abuse on January 9, 2026. The children lived with mother, and father provided childcare while she was at work. Father watched the children on January 7, 2026, for about nine hours, and at 12:30 a.m. on January 8, 2026, mother noticed bruising on the child's body. Father said he pinched the child and may have been too rough. He stated he did not know why he did it and that he needed "help." The social worker met mother at the hospital regarding the referral, and mother said she and father were married but currently separated. She said father did not reside in her apartment, but he provided childcare there. Mother reported that due to her concerns about the bruising, she told father to leave the residence that night, and she would arrange alternative childcare. Mother said she contacted law enforcement on January 9, 2026, to ensure the incident was documented, and she was advised not to inform father about police involvement and not to allow him to have contact with the children. The police contacted Child Protective Services (CPS).

The social worker completed a body check on the child and photographed the reported injuries. Mother pointed out additional bruises on the child's elbow and legs. She believed the bruises may have resulted from father holding the child or being too rough. She denied any prior observations of father using physical discipline with the

---

[3] Because father is not a party to this writ, we will focus on the allegations against mother.

boys and described his interactions with them as generally appropriate. Mother expressed concern that father may be experiencing depression and/or stress and reported he previously disclosed a history of depression.

Mother asked the social worker when father could resume contact with the children, and the social worker said the forensic results and coordination with law enforcement would have to occur first. When asked if she wanted to pursue getting a family law custody order, mother declined because she loved father and intended to work on their relationship. The social worker noted that mother provided inconsistent statements, saying she did not feel safe leaving the child with father, but also saying he was a good father. Mother further disclosed she believed father may have harmed the child due to his jealousy related to the attention she gave the children.

The social worker went to mother's home and observed a lot of men's clothing everywhere. Mother said the clothes belonged to her, explaining that she shared clothes with father. She denied father lived there. Throughout the visit, mother alternated between expressing love for father and saying her priority was protecting the children. She denied feeling the need for a restraining order.

On January 12, 2026, Riverside County Child Assessment Team (the assessment team) contacted the social worker to schedule a forensic medical exam. A forensic doctor subsequently reviewed the photographs of the child, stated he was extremely concerned regarding the severity of her injuries, and requested that the child be taken to the emergency room immediately for evaluation. The child was later admitted to the hospital.

On January 14, 2026, the social worker observed mother's interview with police detectives and noted that she made inconsistent statements. Mother told the police that father had been staying in the home due to his work being slow and said his clothing was present in the home. She declined to complete a pretext phone call with father for the detectives and dec/lined to send text messages at their request. When asked who was supervising the children while she was at the station, mother said her cousin Antonia was watching them.

The social worker spoke with the forensic pediatrician, who reported that the child had at least three rib fractures. At least one fracture appeared acute, while the others appeared to show signs of healing, which suggested the child may have been abused on more than one occasion. The forensic pediatrician said rib fractures could not be dated, so the timeframe was unknown. The pediatrician believed the child had experienced non-accidental trauma resulting from physical abuse.

The social worker subsequently spoke with a police detective, who had contacted mother's cousin, Antonia. Antonia said she was not supervising the children while mother was at the police station on January 14, 2026.

On January 15, 2026, the children were taken into protective custody. The boys were taken to the emergency room and were diagnosed with upper respiratory infections and Parainfluenza Virus 2. They both had child abuse exams, which were noted as being normal.

The social worker summarized that DPSS was concerned about mother's overall protective capacity, noting her inconsistent statements on father's residence, access to the

5

children, and childcare arrangements. Mother also made statements that appeared to minimize and/or be contradictory regarding the cause of the child's injuries. Her inconsistent reporting raised concerns that she may be withholding information and/or being untruthful, which limited DPSS's ability to fully assess child safety and increased concern that she may not consistently protect the children from father.

On January 20, 2026, the court held a detention hearing, and both parents appeared. The court detained the children in foster care.

*Jurisdiction/Disposition*

On February 5, 2026, the social worker filed a jurisdiction/disposition report, recommending that the court strike the section 300, subdivision (g) allegation, but find true the other allegations, declare the children dependents, and provide mother (but not father) with reunification services.

The social worker reported that, on January 9, 2026, photographs taken by the police showed some discoloration on the child's elbow and a bruise on her stomach. The social worker took pictures of the child's abdomen, which showed greenish-brown bruises that appeared to be aging. Mother presented law enforcement with a picture of the child's bruise on the right side of her stomach that she had taken the day after the incident occurred. Bruises were observed on the child's stomach that "looked like partial bruising, bruised dots, and two circular bruises, as if an object was compressed against her body."

The social worker further reported that, on January 13, 2026, a Suspected Child Physical Abuse and Neglect Exam was conducted on the child. It was reported that

6

abdominal bruising in a pre-mobile child was indicative of abuse. A skeletal survey revealed an acute right 10th rib fracture and healed left 5th and 6th rib fractures, and there were signs of liver damage/irritation that could have been caused at the time of the abdominal injury or before. The child had a follow-up doctor's appointment which confirmed that the child was physically abused.

On February 10, 2026, the court held a jurisdiction hearing and set the matter contested, at the parents' request. The court acknowledged that DPSS filed a first amended petition which deleted the allegation under section 300, subdivision (g), but kept the other allegations the same.

The social worker filed an addendum report on March 10, 2026, recommending that the court sustain the petition, declare the children dependents, provide mother with reunification services, and remove the children from both parents under section 361, subdivision (c). The social worker stated the child received significant injuries while in father's care, including extensive bruising and marks. The severity of her injuries, combined with the medical findings and father's admission, supported the conclusion that she suffered severe physical abuse, as defined by section 300, subdivision (e), and that her siblings were at risk of similar harm.

On April 10, 2026, the social worker filed an addendum report recommending that the court sustain the petition, declare the children dependents, deny both mother and father reunification services under section 361.5, subdivision (b)(5), and remove the children from their custody under section 361, subdivision (c). The social worker reported that, on March 10, 2026, the police contacted her and stated they had taken

mother into custody due to the discovery of evidence confirming she was aware of father physically abusing the child, yet continued to allow him access to the children.

The social worker attached a supplemental police report in which an officer reported that he spoke with Dr. Massi, the assistant medical director from the assessment team, on February 10, 2026. Dr. Massi estimated that, at the time the images of the child were taken, the rib fractures were at least two to three weeks old. He said that the fractures were caused by a front to back squeezing with hands wrapped around the child's chest, and that it was impossible that the fractures were caused by pinching. Dr. Massi explained that, in order to form bruises, the child's belly would have to have been compressed to her spine. He noted that her fifth rib was broken in two places and that, based on the totality of the child's injuries, there was front to back compression that happened on at least two different occasions.

The social worker further reported the police downloaded the contents of father's cell phone, which showed that, on December 17, 2025, mother texted him that "she" (the child) was bruised on her face and legs, and her jaw line had marks, and her nose had a scab. Mother texted: "Neither of these kids have a voice and it's sad that they're better off in a daycare than their dad [*sic*] U want some idiot to be rough with your daughter because she grows up with brothers As an excuse? If she or any of the kids have to go to the hospital how do you explain this?" Mother also texted that "'[h]er face is f--ked up.'" On December 24, 2025, mother texted that "these things are happening that you're doing to [the child] is a trigger for me. She's never gonna remember hopefully."

Mother confirmed with the officer that she sent those text messages on December 17, 2025, which was before she originally claimed to notice the child's bruises. When asked to explain the text messages, mother said she no longer wanted to talk and asked for a lawyer.

In light of the new evidence, the social worker recommended that services be denied to mother, under section 361.5, subdivision (b)(5). Father had been identified as the perpetrator of severe abuse of the child. The assessment team expressed serious concern regarding the severity of the injuries and opined that they were consistent with non-accidental, inflicted abuse. The social worker noted the findings also impacted the boys, as their young ages made them vulnerable to abuse. Further, the social worker found that "[t]he severity of [the child's] injuries, combined with the medical findings and the father's reported admission" supported the conclusion that the child suffered severe physical abuse. (§ 300, subd. (e).) Moreover, police evidence confirmed mother was aware of the abuse and failed to take protective action of the child, thereby putting the boys at high risk of similar harm.

The court held a contested jurisdictional/dispositional hearing on April 15, 2026. County counsel asked the court to strike section 300, subdivision (g) allegation, but find the other allegations true. Mother's counsel asked the court to strike section 300, subdivision (a) allegation (serious physical harm) as to mother. As to section 300, subdivision (e), mother's counsel argued DPSS could not prove mother knew or should have known of the child's rib injuries, as she only knew about the bruises, which did not fall within subdivision (e). Mother's counsel also argued that, if the court wanted to

9

apply section 300, subdivision (e) to bypass services, it only applied to the child, not the boys; thus, mother could not be denied services with regard to them.

County counsel argued that the court should sustain the allegations under section 300, subdivisions (e) and (j), since the text messages between mother and father demonstrated she knew the child was being severely abused and had sustained significant injuries while in his care; nonetheless, she continued to allow him to take care of the children. Further, if the court found section 300, subdivision (e) true, the court should bypass mother's services under section 361.5, subdivision (b)(5). Counsel additionally cited *In re Kenneth M.* (2004) 123 Cal.App.4th 16 (*Kenneth M.*) to contend that the court may deny reunification services as to a sibling of the child who falls within section 361.5, subdivision (b)(5).

After hearing arguments from counsel, the court struck section 300, subdivision (a) allegation as to mother, but found the other allegations true. It noted the forensic evidence that the child had extensive bruising. The court pointed out that mother confirmed the injuries by text messages, noting she said the child's face was "F'd up." The court found there was "extensive physical abuse over an extended period of time of an infant." It further stated that the bruising and injuries shown by the forensic evidence on a child that was six months old "demonstrates physical trauma that anyone … should know … is physical trauma that in an infant of that size could cause significant harm to the minor." The court found there was significant evidence that mother knew father was abusing the child and that the evidence showed the injuries were "so severe." It specifically noted mother's text messages, expressing her "concern for law enforcement

10

involvement or hospitalization … based upon the severity of the injuries that she was observing."

The court then bypassed mother's services under section 361.5, subdivision (b)(5) as to the children, noting she knew the abuse was occurring and permitted them to be in father's care, thereby placing them all at risk.  The court acknowledged county counsel's position under *Kenneth M.* that the court could deny services pursuant to section 361.5, subdivision (b)(7) as to the siblings of a child who fell within section 361.5, subdivision (b)(5), and that the boys were at risk, and it found that DPSS had met its burden.  The court also stated reunification services were being denied because they were not in the children's best interests.

The court sustained the petition, adjudged the children dependents, and removed them from the parents' custody under section 361, subdivision (c)(1).  It then set a section 366.26 hearing for August 13, 2026.

## DISCUSSION

I. The Court Properly Bypassed Mother's Services, and the Order Bypassing Services As to Isa.A. and Isr.A. Need Not Be Reversed

Mother argues the court erred in denying her services under section 361.5, subdivision (b)(5), as to all the children.  She does *not* contest the court's exercise of jurisdiction over the child under section 300, subdivision (e).  Nonetheless, she argues the evidence was insufficient to support a finding she knew or should have known the child suffered serious physical abuse as defined by section 300, subdivision (e).  Mother also asserts that the child's siblings (the boys) were not subject to severe abuse and the court

did not take jurisdiction over them pursuant to section 300, subdivision (e). DPSS concedes that section 361.5, subdivision (b)(5) did not apply to deny services as to all the children; it just applied to the child, since she was the only minor found to come under section 300, subdivision (e). Thus, DPSS concedes the court improperly denied services with regard to the boys under section 361.5, subdivision (b)(5). However, they contend the error was not prejudicial, since the court should (and could) have denied services as to the boys under section 361.5, subdivision (b)(7); therefore, no reversal is required. We conclude the court properly bypassed mother's services as to the child under section 361.5, subdivision (b)(5), and there is no need to reverse the court's bypass order with regard to the boys.

A. *Relevant Law*

Section 361.5, subdivision (b) "sets forth a number of circumstances in which reunification services may be bypassed altogether. These bypass provisions represent the Legislature's recognition that it may be fruitless to provide reunification services under certain circumstances." (*Francisco G. v. Superior Court* (2001) 91 Cal.App.4th 586, 597.) Specifically, "reunification services need not be provided to a parent or guardian … when the court finds, by clear and convincing evidence, any of the following: [P] … [P] (5) That the child was brought within the jurisdiction of the court under subdivision (e) of Section 300 because of the conduct of that parent or guardian." (§ 361.5, subd. (b)(5).) Reunification services also need not be provided to a parent when "the parent is not receiving reunification services for a sibling or a half sibling of the child pursuant to paragraph (3), (5), or (6)." (§ 361.5, subd. (b)(7).)

12

"""Once it is determined one of the situations outlined in subdivision (b) applies, the general rule favoring reunification is replaced by a legislative assumption that offering services would be an unwise use of governmental resources."""" [Citation.] An order denying reunification services is reviewed for substantial evidence." (*R.T. v. Superior Court* (2012) 202 Cal.App.4th 908, 914.) "We review the evidence most favorably to the prevailing party and indulge in all legitimate and reasonable inferences to uphold the court's ruling." (*Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, 1424.)

B. *The Court Properly Bypassed Services as to the Child Under Section 361.5, Subdivision (b)(5)*

Although mother states she is not contesting the court's jurisdiction over the child under section 300, subdivision (e), she proceeds to argue the record does not support a finding she was aware the child suffered serious physical abuse, as defined by that subdivision. Section 300, subdivision (e) provides that a child comes within the jurisdiction of the court if "[t]he child is under five years of age and has suffered severe physical abuse by a parent, or by any person known by the parent, if the parent knew or reasonably should have known that the person was physically abusing the child. For the purposes of this subdivision, 'severe physical abuse' means any of the following: … any single act of sexual abuse that causes significant bleeding, deep bruising, or significant external or internal swelling; or more than one act of physical abuse, each of which causes bleeding, [or] deep bruising". Since mother concedes the court properly took jurisdiction over the child under section 300, subdivision (e), it is unclear why she is

arguing the evidence does not show she knew or should have known the child was being abused.

To the extent mother may be claiming the court erred in bypassing her services under section 361.5, subdivision (b)(5) as to the child, we disagree. That subdivision permits a court to bypass services "when the court finds, by clear and convincing evidence, … [t]hat the child was brought within the jurisdiction of the court under subdivision (e) of Section 300 because of the conduct of that parent or guardian." (§ 361.5, subd. (b)(5).) It is undisputed that the child was properly brought within the court's jurisdiction under section 300, subdivision (e), and we note the court found there was significant evidence that mother knew father was abusing the child, citing the text messages between them and the severe injuries shown during the forensic examination. Therefore, the court properly applied section 361.5, subdivision (b)(5) to bypass mother's services.

C. *The Court's Denial of Services Citing Section 361.5, subdivision (b)(5) Was Harmless Error.*

Mother appears to also claim the court erred in bypassing services regarding the boys pursuant to section 361.5, subdivision (b)(5), since it did not take jurisdiction over them under section 300, subdivision (e). As stated *ante*, DPSS concedes the court improperly denied services with regard to the boys under section 361.5, subdivision (b)(5). However, DPSS contends the error was not prejudicial, since the court could have, and should have, denied services as to them under section 361.5, subdivision (b)(7).

14

Under section 361.5, subdivision (b)(7), the juvenile court may deny reunification services when "the parent is not receiving reunification services for a sibling or a half sibling of the child pursuant to paragraph … (5)."  (§ 361.5, subd. (b)(7).)  As DPSS points out, the court was aware that it could bypass services under section 361.5, subdivision (b)(7), as county counsel argued such, citing *Kenneth M.*, *supra*, 123 Cal.App.4th 16.  In *Kenneth M.*, the juvenile court denied services as to a child under section 361.5, subdivision (b)(5) and also denied services as to her sibling under section 361.5, subdivision (b)(7).  (*Id*. at p. 22.)  In the instant case, county counsel argued that father was responsible for the child's severe injuries, mother knew what was going on, did nothing to protect her, and tried to cover everything up, and there was no indication that services would benefit the children.

In making its ruling, the court found the following:  "All three children were permitted to be in the father's care, placing them all at risk.  The lack of transparency has some significance as well when courts must protect these children, and the court for the reasons stated on the record and injuries to the baby, finds that *the other children are equally at risk under (b)(5), using the In Re Kenneth M. case*; and … the court would be in agreement with the recommendations for bypass as to both parents for those reasons."  Although the juvenile court erred in citing subdivision (b)(5) as its basis for denying services, the error is harmless as subdivision (b)(7) was clearly applicable and authorized the court to deny services.  In citing *Kenneth M.*, the court signaled its awareness that subdivision (b)(7) also applied.

15

Therefore, on this record, we conclude there is no need to reverse the order bypassing services as to the boys. It is undisputed that mother was not receiving reunification services for the boys' sibling (the child), pursuant to section 361.5, subdivision (b)(5). Thus, the record supports the bypass of services under section 361.5, subdivision (b)(7), and it appears the court meant to deny services under that subdivision. We conclude that any error in the court bypassing services under section 361.5, subdivision (b)(5), rather than section 361.5, subdivision (b)(7), was harmless. (See *In re Celine R.* (2003) 31 Cal.4th 435, 59-60; see also, *In re J.P.* (2017) 15 Cal.5th 789, 799.)

II. There Was Sufficient Evidence to Support the Findings Under Section 300, Subdivisions (b) and (j) as to the Boys

Mother claims the amended petition did not allege the boys were subject to section 300, subdivision (b), and argues the record does not support a finding that they "experienced serious physical harm or illness." She next contends the evidence was insufficient to support a finding under section 300, subdivision (j) that the boys were at substantial risk of being abused similarly to the child. We conclude the evidence was sufficient to sustain the findings under both subdivisions.

A. *The Evidence Was Sufficient*

Section 300, subdivision (b), provides that the juvenile court may adjudge a child a dependent of the juvenile court when the child has suffered, or there is a substantial risk that the child will suffer, serious harm or illness, "as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child." (§ 300, subd. (b)(1)(A).) "The standard of proof required in a section 300 dependency hearing is the

16

preponderance of evidence." (*In re Basilio T.* (1992) 4 Cal.App.4th 155, 168 (*Basilio T.*).) "If, on the entire record, there is substantial evidence to support the findings of the juvenile court, we uphold those findings. [Citation.] We do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or evaluate the weight of the evidence. Rather, we draw all reasonable inferences in support of the findings, view the record most favorably to the juvenile court's order, and affirm the order even if other evidence supports a contrary conclusion. [Citations.] The appellant has the burden of showing the finding or order is not supported by substantial evidence." (*In re Christopher L.* (2006) 143 Cal.App.4th 1326, 1333.)

Contrary to mother's claim, the amended petition here alleged that the boys came within the provisions of section 300, subdivision (b). Specifically, it alleged that, while in the parents' care and custody, the child was abused by father, and the explanation given by the parents was inconsistent with the injuries; mother knew or reasonably should have known the child was being abused, and she failed to protect the child; and the boys were at risk of similar harm.

Further, mother's sole argument with regard to section 300, subdivision (b), is that the record does not support a finding that the boys "had experienced serious physical harm or illness." However, section 300, subdivision (b) does not require a finding that a child actually experience serious physical harm or illness. It provides a child is within the jurisdiction of the court if he "has suffered, or there is a *substantial risk* that the child *will suffer*, serious harm or illness, as a result of the parent's failure to adequately

17

supervise or protect him. (§ 300, subd. (b)(1)(A), italics added.) There was sufficient evidence the boys were at substantial risk of harm. (See *post*.)

With regard to section 300, subdivision (j), mother argues the evidence did not support a finding that the boys were at substantial risk of harm similar to that experienced by the child. Section 300, subdivision (j) provides that a child is within the court's jurisdiction if his sibling has been abused, "as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused [], as defined in those subdivisions." It further provides that the court shall consider the circumstances surrounding the abuse of the sibling, the age and gender of each child, "and any other factors the court considers probative in determining whether there is a substantial risk to the child." (§ 300, subd. (j).)

Here, mother concedes the first prong of section 300, subdivision (j) was met, in that the child was abused, as defined in subdivision (e). She argues the evidence does not show the second prong was met, i.e., that the boys were at "substantial risk of similar harm experienced by [the child]." However, in support of her argument, mother asserts there was no evidence that the boys were "injured or subject to physical harm." Section 300, subdivision (j) does not require such finding. (§ 300, subd. (j).)

Further, the court's true finding under section 300, subdivision (j) was supported by the evidence. The text messages demonstrated mother was aware that father was abusing the child and caused her significant injuries. {CT 308-309} Notably, the child was found to have multiple rib fractures, and the evidence showed the injuries were non-accidental. {CT 31, 310} Yet, mother continued to let father take care of the boys. She

18

delayed in reporting the child's injuries to DPSS and the police, she provided inconsistent statements to the social worker and the police on whether father lived with her and had access to the children, and she made statements that appeared to minimize his conduct and continued to call him a good father. In addition, mother appears to have lied about who was watching the children when she was at the police station. Moreover, the boys were at a vulnerable age. For all these reasons, the social worker was properly concerned about mother's protective capacity of all the children. {CT 25-26, 30-31, 34, 303-304, 310}

Viewing the evidence in the light most favorable to the juvenile court's order, as we must, we conclude the evidence supported the court's finding that the boys were at substantial risk of harm and came within section 300, subdivision (j). (RT 43-44}

III. The Court Properly Removed the Boys from Mother's Custody

Mother argues the evidence was insufficient to support removal of the boys from her care. {writ pp. 19-20} We conclude the evidence supported removal.

A. *Relevant Law*

"Before the court may order a child physically removed from his or her parents, it must find, by clear and convincing evidence, the child would be at substantial risk of harm if returned home and there are no reasonable means by which the child can be protected without removal." (*In re Hailey T.* (2012) 212 Cal.App.4th 139, 145-146 (*Hailey T.*); § 361, subd. (c)(1).)

"The standard of review of a dispositional order on appeal is the substantial evidence test." (*Hailey T., supra*, at p. 146.) "Under this standard, we determine whether

19

there is any substantial evidence, contradicted or uncontradicted, which supports the conclusion of the trier of fact." (*In re G.C.* (2020) 48 Cal.App.5th 257, 265 (*G.C.*).) However, where the burden of proof supporting the juvenile court's order requires a showing by clear and convincing evidence, as does the removal order in this case, our review must take into consideration that heightened burden of proof. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995.)

Thus, "when reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B., supra,* 9 Cal. 5th at pp. 995-996.)

"All evidentiary conflicts are resolved in favor of the respondent, and where more than one inference can reasonably be deduced from the facts, we cannot substitute our own deductions for those of the trier of fact." (*G.C., supra,* 48 Cal.App.5th at p. 265.)

Mother argues the record does not support a finding that the boys would be at substantial risk of danger in mother's home by clear and convincing evidence, asserting they were not injured by either parent and "the risk stemmed only from the abuse perpetrated upon [the child]." {writ p. 20} In support of her claim, she relies on her previous argument. {writ p. 20} (See § II, *ante.*)

For the reasons stated *ante*, we conclude the evidence supported the court's removal order—that is, the record demonstrates that the boys would be at substantial risk of harm if returned home and there are no reasonable means by which they can be

protected without removal, given father's conduct and mother's conduct demonstrating her inability or unwillingness to protect the children as discussed previously. Ultimately, the evidence raised significant concerns of whether mother would protect the boys from father and therefore supported the court's removal order. (See § II, *ante*.)

DISPOSITION

The writ petition is denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS

J.

We concur:

MILLER

Acting P. J.

RAPHAEL

J.

21